UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

20 DOGWOOD LLC, ABOLFAZLE ZADE, and NASRIN BESHARATI,

        *Plaintiffs*,

  -against-

VILLAGE OF ROSLYN HARBOR; STEVEN R. FELLMAN, Individually and as Building Inspector for the Village of Roslyn Harbor; and MARLA WOLFSON, Individually and as Village Clerk for the Village of Roslyn Harbor,

        *Defendants*.

22-CV-4047 (ARR) (LGD)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

    Plaintiffs, 20 Dogwood LLC, Abolfazle Zade, and Nasrin Besharati, bring this action alleging violations of federal and state law against the Village of Roslyn Harbor (the "Village"), Steven R. Fellman, and Marla Wolfson (collectively, "defendants"). Plaintiffs principally allege that their rights were violated when defendants harassed them and used construction permitting enforcement to drive them from Roslyn Harbor. Before me is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the motion to dismiss is granted.

## BACKGROUND

    The following facts are drawn from plaintiffs' amended complaint and presumed to be true. Abolfazle Zade and Nasrin Besharati (the "Zades") are a married couple who resided in a house located at 20 Dogwood Avenue in Roslyn Harbor (the "residence" or the "property") during the time relevant to this suit. Am. Compl. ¶¶ 1, 4, ECF No. 13. The residence was owned by plaintiff 20 Dogwood LLC (the "LLC"). *Id.* ¶ 1.

The Zades, an elderly couple originally from Iran, moved into the residence when it was acquired by the LLC in 2018. *Id.* ¶¶ 10, 12. Over time, the Zades obtained various building permits, including a May 2018 permit to renovate the interior, an August 2018 permit to build a front entry and enclose a rear porch, and a September 2019 permit to build a retaining wall. *Id.* ¶¶ 13, 14, 17. The conflict with defendants began in September 2018, when trees on the property fell during a hurricane. *Id.* ¶ 15. Marla Wolfson, the Roslyn Harbor Village Clerk, accused plaintiffs of unlawfully removing the trees, though the Zades were able to provide photographic evidence that the trees fell in the storm. *Id.* ¶ 16. In May 2020, plaintiffs applied for a permit to remove five additional trees, which were either dead or dangerously close to their home. *Id.* ¶ 18. Wolfson denied the application to remove two trees close to the home but approved the removal of the other three trees. *Id.* Plaintiffs unsuccessfully appealed the denied permit to the Village Board, and then appealed a second time. *Id.* ¶¶ 19–20. A permit to remove the five trees was eventually issued when the Village Board overturned Wolfson's denial in August 2020. *Id.* ¶¶ 21–23.

Plaintiffs' successful appeal of the tree removal permit apparently angered Roslyn Harbor Building Inspector Steven Fellman, who embarked on a two-year campaign of harassment against the Zades—a campaign allegedly motivated by the Zades' age and ethnicity. *Id.* ¶ 24. First, when plaintiffs were trying to bring in soil to fill the holes left by the removed trees, Fellman came to the property, yelled at Besharati, mocked her accent, and issued a stop work order and ticket for doing construction without a building permit. *Id.* ¶¶ 27–28; Decl. of Steven C. Stern ("Stern Decl."), Ex. C, ECF No. 19-3. Fellman filed a corresponding information with the Village Justice Court stating that he observed site grading and filling without a permit in violation of the Village

Code. Stern Decl., Ex. D, ECF No. 19-4.[1] Fellman also accused plaintiffs of building a retaining wall and deck without permits and insisted that the retaining wall and deck were too long, even though plaintiffs had received permits for the work that did not specify the length of the wall or deck. *Id.* ¶¶ 29–30. Defendants proceeded to wrongfully insist on payment of additional fees: for a topical survey, for topsoil review by the Village engineer, and for renewed deck and retaining wall permits. *Id.* ¶¶ 31, 32, 36. Finally, defendants imposed a fine on plaintiffs for not renewing the permits. *Id.* ¶ 37.

Though plaintiffs eventually paid to renew the permits, their "nightmare" continued when Fellman stated that plaintiffs' proposed topsoil addition would impact storm water drainage. *Id.* ¶¶ 38–40. In response to questions about his assessment, Fellman "became very angry" and refused to allow Zade to enter the Building Department to see his permit application, ridiculing Zade's accent in the process. *Id.* ¶¶ 41–43. When plaintiffs eventually obtained their permit file, they found that defendants had "illegally altered it by drawing in a retaining wall and attaching it to the permit application." *Id.* ¶ 44. Plaintiffs complained to the Roslyn Harbor mayor about Fellman's conduct, but no action was taken. *Id.* ¶¶ 45–46. As a result, plaintiffs decided to sell their home. *Id.* ¶ 47. Plaintiffs located a potential buyer, who backed out of the sale after Wolfson, in consultation with Fellman, told the buyer that the property had open violations and needed extensive repairs. *Id.* ¶¶ 48–49. In January 2022, Fellman issued another ticket for construction without a permit, with no basis except to interfere with the sale of the property. *Id.* ¶¶ 52–54. When Fellman admitted there was no basis for the second ticket because the summons was based on the

---

[1] The amended complaint only mentions the stop work order, but I take judicial notice that a ticket was issued summonsing 20 Dogwood LLC to appear in Roslyn Harbor Village Justice Court for allegedly violating the Village Code and that an information was filed regarding that ticket. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). ("[C]ourts routinely take judicial notice of documents filed in other courts . . . .").

3

previously adjudicated violation, the case was dismissed. *Id.* ¶ 54. Plaintiffs eventually sold the property for a lower price than the original potential buyer had agreed to pay. *Id.* ¶ 55.

Plaintiffs filed suit in July 2022. Their amended complaint brings an equal protection claim, a procedural due process claim, and a substantive due process claim, all pursuant to 42 U.S.C. § 1983, a 42 U.S.C. § 1985 conspiracy claim, a defamation claim, and an unspecified state constitutional claim. Am. Compl. ¶¶ 56–79. Defendants moved to dismiss. Notice of Mot., ECF No. 18.

## LEGAL STANDARD

Defendants argue that the case must be dismissed for lack of subject matter jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b)(1), 12(b)(6). The principal difference between the 12(b)(1) and 12(b)(6) analysis is the extent I can look beyond the pleadings. In reviewing a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), I must "accept[] as true all material [factual] allegations of the complaint" and "draw[] all reasonable inferences in favor of the plaintiff," but I also may consider evidence outside the pleadings submitted by either party. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (citation and internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), I must also accept all factual allegations as true and must draw all reasonable inferences in plaintiff's favor, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013), but may only consider the "facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference" and "matters of which judicial notice may be taken," *Kramer*, 937 F.2d at 773. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

### I. Plaintiffs Have Standing.

To satisfy the requirements of Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quotations omitted). These elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, the plaintiff, who bears the burden of establishing the elements of standing, "must clearly allege facts demonstrating each element." *Spokeo, Inc.*, 136 S. Ct. at 1547 (quotation and alteration omitted). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice," because on a motion to dismiss it is "presum[ed] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotation omitted).

Defendants argue that the Zades lack standing to sue because 20 Dogwood LLC suffered the only cognizable injury—the loss of value to the property it owned. Though defendants may be correct as a general matter that "a corporate officer or shareholder . . . cannot prosecute his corporation's section 1983 claims," *Sterngrass v. Bowman*, 563 F. Supp. 456, 459 (S.D.N.Y. 1983), the suit cannot be dismissed for lack of standing. First, 20 Dogwood LLC is a named

5

plaintiff, so the suit would survive even if the individual plaintiffs lacked standing to bring some or all of the claims. Second, defendants incorrectly assume that the only possible injury was the alleged loss of value to the property. The amended complaint plausibly alleges injuries to the individual plaintiffs that are fairly traceable to defendants' actions—plaintiffs allege, among other things, that defendants' conduct effectively forced them to move out of Roslyn Harbor. Am. Compl. ¶ 47. Plaintiffs also allege that unwarranted fines were levied against them, and in at least one instance the Village initiated code enforcement against Abolfazle Zade directly. Am. Compl. ¶ 37; Stern Decl., Ex. F, ECF No. 19-6 (ticket listing Zade as defendant). The Second Circuit has held that plaintiffs have standing in these circumstances, and defendants' additional arguments about standing are really arguments about the merits of plaintiffs' claims. *See Hu v. City of New York*, 927 F.3d 81, 89 (2d Cir. 2019) (finding standing where defendants' enforcement activities imposed financial burdens upon plaintiffs); Defs.' Reply Mem. of L. ("Defs.' Reply"), 2–3, ECF No. 22 (arguing that plaintiffs lack standing because they fail to state a claim). Because I find plaintiffs' allegations sufficient to establish standing at the pleadings stage, I will turn to the merits.

**II.    Plaintiffs Fail to State an Equal Protection Claim.**

Plaintiffs' complaint can be construed as alleging two equal protection claims for discrimination based on the enforcement of Roslyn Harbor's building codes. *See* Mem. of L. in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") 14–15, ECF No. 21. The first, for selective enforcement, alleges that defendants treated plaintiffs differently from others similarly situated on the basis of racial animus against Iranians and personal animus against the Zades. The second, a "class of one" theory, alleges that defendants' treatment of plaintiffs violated the Equal Protection Clause because it was irrational and arbitrary.

6

The selective enforcement and class of one claims both require a showing that plaintiffs were treated differently from a similarly situated comparator, but the degree of similarity required differs. To state a class of one claim, plaintiffs must allege that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Unlike a selective enforcement claim, a class of one claim "does not require proof of a defendant's subjective ill will towards the plaintiff," but it does require a higher degree of similarity. *Hu*, 927 F.3d at 94. The standard requires a plaintiff to prove that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.* (quotation omitted).

To state a selective enforcement claim, plaintiffs must plead facts that allow the court to reasonably infer that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quotation omitted); *see also LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980) (first articulating selective enforcement theory). Because a selective enforcement claim requires proof of malice, the similarity standard is lower than that required to prove a class of one claim. *Hu*, 927 F.3d at 95. The plaintiff and the comparator need not be "identical." *Id.* at 96 (quotation omitted). Rather, the plaintiff and the comparator "must bear a reasonably close resemblance . . . in all material respects." *Id.* (quotations omitted).

The Second Circuit has recognized that "[t]here is no precise formula to determine whether an individual is similarly situated to comparators" and has "cautioned against deciding whether two comparators are similarly situated on a motion to dismiss." *Id.* at 97 (quoting *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)). However, the "rule is not absolute," *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001), and "dismissal is appropriate where it is not plausible that a jury could ultimately determine that the comparators are similarly situated," *Joglo Realties, Inc. v. Seggos*, 229 F. Supp. 3d 146, 153–54 (E.D.N.Y. 2017) (quotation omitted).

The amended complaint alleges that "[o]ther similarly situated property owners and residents of the Village have not been treated as plaintiffs have," including "the owners of the properties located at 10 Dogwood Avenue and 25 Dogwood Avenue who were not of Iranian descent and had undertaken similar construction at their properties without harassment by the defendants." Am. Compl. ¶¶ 58–59. Thus, the proffered comparators consist of two neighbors on plaintiffs' street who are not Iranian but had performed "similar construction at their properties." *Id.* ¶ 59.

The amended complaint's vague assertion fails to meet the similarity standard of either equal protection theory. Plaintiffs principally allege that the village and its employees singled them out by issuing a stop work order and two tickets for doing construction without a building permit. Am. Compl. ¶¶ 28, 52. It is impossible to determine whether plaintiffs were similarly situated in all material respects to the comparators absent any allegations as to the nature of the construction performed by the neighbors or the status of the permitting for that construction. "Similar construction" is a generic allegation that could cover any number of activities. For example, plaintiffs state that they undertook various projects, including renovating the interior, constructing

8

a front entry and portico, and enclosing a rear porch. Am. Compl. ¶¶ 13–14. However, the town's enforcement activity apparently focused only on unpermitted site grading and filling and the construction of a retaining wall and deck. *See* Stern Decl., Ex. D, ECF No. 19-4. Further, the selective enforcement theory is missing a crucial allegation—that the comparators were also at least arguably in violation of town codes. As I have stated in a prior case, plaintiffs alleging selective enforcement of town ordinance violations not only need to allege that the comparators were committing similar violations, but also need to "plead facts allowing the court to infer that the *manner* and *extent* of the violations is similar." *Joglo Realties, Inc.*, 229 F. Supp. 3d at 156.[2] Because plaintiffs have failed to plausibly allege that they were treated differently from a similarly situated comparator, the equal protection claims are dismissed.

**III.     Plaintiffs Fail to State a Due Process Claim.**

The Due Process Clause of the Fifth Amendment provides in relevant part that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To prevail on a procedural due process claim, a plaintiff must prove that they (1) possess a protected liberty or property interest, and (2) were deprived of that interest without constitutionally adequate process. *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). Whether process is constitutionally adequate depends on: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; [and] (3) the government's interest, including the possible burdens of alternative procedures." *Id.* at 197 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Pre-

---

[2] Though plaintiffs might contest that they were in violation of the town code, they do not allege in the complaint that they had a permit to do the post-tree removal grading and filling work. *See* Am. Compl. ¶¶ 25–28.

9

deprivation procedures may be warranted in some cases, and any pre-deprivation process should include, "at a minimum, notice and the opportunity to respond." *Id.* at 197–98.

Plaintiffs argue that defendants violated their procedural due process rights by issuing the stop work order, barring Zade from entering a public building, altering plaintiffs' building application, issuing a ticket based on an information that had already been adjudicated, and lying to a prospective homebuyer to interfere with the sale of the property. Pls.' Opp'n 15. Though all of this alleged conduct is certainly objectionable, plaintiffs' claims fail on the first prong of the due process inquiry—the complaint does not adequately allege that plaintiffs were deprived of a protected liberty or property interest.

First, plaintiffs have not plausibly alleged that the issuance of the stop work order deprived them of a protected interest. Plaintiffs' only support for its stop-work-order theory is a citation to *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455 (D.C. Cir. 1997). But *Tri County* is readily distinguishable. In that case, a potentially indefinite stop work order deprived the plaintiffs of a building permit in which (as the defendants conceded) they had a protected property right. *Id.* at 458, 461. Here, plaintiffs have not identified a deprivation of any protected interest through issuance of the apparently temporary stop work order. The present case has more in common with *Cathedral Church of the Intercessor v. Incorporated Village of Malverne*, 353 F. Supp. 2d 375, 386 (E.D.N.Y. 2005), where the court found no deprivation of a property interest due to the issuance of a temporary stop work order from which the plaintiffs could get relief by satisfying the municipality's conditions.

Second, plaintiffs have not shown that there is a protected interest in gaining admittance to the Roslyn Harbor village hall. Plaintiffs do not specify the source of the purported right to enter the village hall, but the Second Circuit has held that the due process right to intrastate travel does

not guarantee access to a specific government building, *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008), and plaintiffs do not identify (and I am not aware of) a right to enter the building arising from New York state law. Third, it is unclear how the alleged alteration of the building application effectuated a deprivation of any kind—let alone a deprivation of a protected right—and plaintiffs do not plausibly allege that it did. Fourth, the issuance of a summons does not constitute a deprivation of a protected interest. Indeed, a summons *is* notice—one of the fundamental requirements of pre-deprivation process. As the amended complaint concedes, the summons in fact led to an opportunity to be heard, and the case was dismissed. Am. Compl. ¶ 54.

Fifth and finally, the alleged lie to a prospective homebuyer does not constitute a procedural due process deprivation. Plaintiffs claim that a "false statement with specific injury is cognizable as a due process violation." Pls.' Opp'n 16. The case plaintiffs cite for this proposition, *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005), demonstrates why plaintiffs' argument fails. "Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991).[3] For a false statement to constitute a constitutional deprivation, a plaintiff must prove a "stigma plus" claim, which requires showing that "(1) the utterance of a statement about [plaintiff] that is injurious to [plaintiff's] reputation, that is capable of being proved false, and that [plaintiff] claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." *Velez*, 401 F.3d at 87 (quotation and alteration omitted). Here, plaintiffs allege that a government employee, Wolfson, made a defamatory statement to a prospective homebuyer, causing the buyer to decline to purchase the property. Because this theory fails to allege any burden imposed by a state actor, such as loss

---

[3] Plaintiffs have also alleged that defendants' statements about the property constitute the tort of defamation. Am. Compl. ¶¶ 72–75.

of employment or "termination or alteration of some other legal right or status," *id.* at 87–88 (quotation omitted), Wolfson's statements cannot support a procedural due process claim.

Plaintiffs' substantive due process claim fares no better. To state a substantive due process claim, a complaint must allege governmental conduct that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). However, "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of 'substantive due process.'" *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (quotations omitted). Here, plaintiffs argue that defendants violated substantive due process by engaging in conduct "that was discriminatory against the Zades because of their ethnic background in violation of their equal protection right"; retaliating against them "for exercising their First Amendment rights"; "depriv[ing] them of a liberty interest in gaining access to a public building"; and "improperly issuing stop work orders and summons." Pls.' Opp'n 12. Because the state action that purportedly constitutes a substantive due process claim would, if it were indeed a constitutional violation, be prohibited by the Equal Protection Clause, the procedural component of the Due Process Clause, or the First Amendment, plaintiffs' substantive due process claim is subsumed by the more particularized allegations and must be dismissed.

**IV.    Plaintiffs Fail to State a Section 1985 Claim.**

Plaintiff's next cause of action arises under 42 U.S.C. § 1985. To state a valid cause of action under the conspiracy clause of § 1985, plaintiffs must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4)

12

an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999); 42 U.S.C. § 1985(3). In the amended complaint, plaintiffs allege that Fellman and Wolfson met on March 7, 2022, and "decided on a course of conduct to drive the individual plaintiffs from" Roslyn Harbor in violation of § 1985. Am. Compl. ¶¶ 68–70.

Defendants argue that that the § 1985 conspiracy claim must be dismissed because it is barred by the intracorporate conspiracy doctrine. Mem. of L. in Support Defs.' Mot. to Dismiss ("Defs.' Mot.") 21, ECF No. 20. In opposition, plaintiffs argue in a largely conclusory fashion that they have stated a conspiracy claim but do not address the intracorporate conspiracy doctrine. Pls.' Opp'n 14. If plaintiffs' silence on this point constitutes an implicit concession, it is for good reason—defendants are correct. "Under the intracorporate conspiracy doctrine, employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together." *K.D. ex rel. Duncan v. White Plains School Dist.*, 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013). There is no question that Fellman and Wolfson are employees of the same municipal entity, and plaintiffs do not allege that an exception to the doctrine applies in this case. *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 360 (E.D.N.Y. 1999) (noting an exception to the intracorporate conspiracy doctrine where individuals within an entity are "pursuing personal interests wholly separate and apart from the entity"). As a result, the § 1985 claim is dismissed.

### V.    Plaintiffs' State Law Claims are Dismissed.

Plaintiffs final two claims arise under state law. The first alleges that defendants defamed plaintiffs and caused the property to sell at a lower price than it would have otherwise, and the

13

second alleges a deprivation of rights under the New York Constitution related to the Village's failure to discipline Fellman or prevent his conduct. Am. Compl. ¶¶ 73–74, 77–78.

At the outset, defendants argue that I lack subject matter jurisdiction over the state law claims because plaintiffs' failure to serve Roslyn Harbor with a Notice of Claim presents a fundamental jurisdictional defect. Defs.' Mot. 23–24. Defendants also argue that plaintiffs failed to state a defamation claim and that the state constitutional claim is subsumed by adequate available remedies under § 1983. *Id.* at 25–27. In response, plaintiffs address only the final argument about adequate remedies. Pls.' Opp'n 16. Again, plaintiffs' silence is telling.

Under New York law, "a plaintiff asserting state tort law claims against a municipal entity or its employees must plead in the complaint that: (1) the Notice of Claim was timely served within ninety days after such claim arose; (2) at least thirty days have elapsed since the Notice of Claim was filed and before the complaint was filed; and (3) the defendant failed to satisfy the claim in that time." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012); *see* N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1). Federal courts must apply the Notice of Claim requirements—which are strictly construed by New York state courts—when exercising supplemental jurisdiction over state law claims. *Matthews*, 889 F. Supp. 2d at 448. Failure to plead compliance with the Notice of Claim requirements, respond to a Notice of Claim argument, or offer any evidence regarding a Notice of Claim, is reason to bar a state law tort claim. *Petway v. City of New York*, No. 10-CV-1048 (ARR) (LB), 2012 WL 2254246, at *8 (E.D.N.Y. June 14, 2012). Accordingly, plaintiffs' state law claims are dismissed.

## VI. Plaintiffs' *Monell* Claim.

Finally, I address plaintiffs' claims against the Village of Roslyn Harbor, brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because I dismiss the amended

complaint on the grounds discussed above, I discuss the *Monell* arguments briefly only to guide further briefing on the issue if plaintiffs seek leave to amend.

In *Monell*, the Supreme Court held that a municipality may be found liable for constitutional violations brought under § 1983 only where the municipality itself caused the constitutional violation through "action pursuant to official municipal policy." 436 U.S. at 691. To state a *Monell* claim, plaintiffs must demonstrate "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Here, plaintiffs allege that the acts of a single official "may fairly be said to represent official policy" for the entire municipality. *Monell*, 436 U.S. at 694. The authority to make policy "necessarily" means "the authority to make final policy." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). To be a "final policymaker" for *Monell* purposes, an official must be "sufficiently high up in the municipal hierarchy that he was responsible under state law for making policy in that area of the municipality's business." *Agosto*, 982 F.3d at 98 (quotations and citation omitted).

Starting with the easier case, it seems clear that Wolfson is not a final policymaker for the purpose of *Monell* liability. New York Village Law states that the village clerk role is largely administrative, principally requiring record keeping duties on behalf of the village board of trustees. N.Y. Village Law § 4-402. Nothing in the amended complaint suggests that Wolfson had policymaking authority. Even assuming that Wolfson denied the Zades' tree removal permit,[4] the

---

[4] Defendants contend that a decision of the Village's Tree Committee was erroneously attributed to Wolfson. Defs.' Mot. 6.

denial was not a final policy decision as it was later overturned on appeal. Am. Compl. ¶ 22. Indeed, the amended complaint does not even allege that Wolfson is a policymaker. *See id.* ¶ 9.

Fellman presents a harder case. Defendants argue that he is not a final policymaker because the building inspector lacks authority to legislate the town code and his enforcement decisions can be appealed to the Village's Zoning Board of Appeals. Defs.' Mot. 6. However, courts in this Circuit have split on the question of whether a building inspector is a final policymaker. In *Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 568 (S.D.N.Y. 2012), the court held that the plaintiffs failed to state a *Monell* claim where they merely alleged that a building inspector and his assistant issued a notice of violation. Likewise, in *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 298 (S.D.N.Y. 1999), the court found that a part-time building inspector who lacked power to "write the building code, set policy for enforcement of the code, or to bring about prosecutions under the code" was not a final policymaker. But *Rodriguez* suggests that the power "to bring about prosecutions under the code" may qualify an official as a final policymaker, and plaintiffs argue that Fellman exercised that power in this case.

Indeed, in *Rodrigues v. Incorporated Village of Mineola*, No. 16-CV-1275 (JFB) (GRB), 2017 WL 2616937 (E.D.N.Y. June 16, 17), Judge Bianco observed that courts "routinely hold that an official with final enforcement authority qualifies as a 'final policymaker' for *Monell* purposes." *Id.* at *9. The court found as much in *Rodrigues*, reasoning that the plaintiffs met their burden under *Monell* where they alleged that the inspector "has the final say in whether summonses shall issue for certain violations of the [Village's Municipal] Code." *Id.* The court's conclusion was buttressed by the fact that nothing suggested the building inspector's enforcement decisions could be appealed to the village's board. *Id.* However, the holding did not depend on non-appealability— the court also relied on *New Creation Fellowship of Buffalo v. Town of Cheektowaga*, No. 99-CV-

16

460A(F), 2004 WL 1498190 (W.D.N.Y. July 2, 2004), where a building inspector was found to be a final policymaker because the relevant town ordinance delegated to its building inspector "sole responsibility for enforcement" even though the inspector's decisions could be appealed to the town board. *Id.* at *64.

Defendants counter that the Second Circuit's recent decision in *Agosto v. New York City Dep't of Education* clarifies that enforcement authority is not sufficient to confer final policymaking status. Defs.' Reply 3–5. But *Agosto* does not purport to clarify the principles of *Monell* liability in any meaningful way. Rather, the *Agosto* court applied existing principles to a relatively straightforward question: whether a school principal's issuance of disciplinary letters and negative evaluations to a teacher was an act of final policymaking under state law. 982 F.3d at 100–01. Finding that New York law vests the Department of Education chancellor with final policymaking authority regarding teacher discipline and evaluations, the court answered in the negative. *Id.* at 101.

Ultimately, because plaintiffs' claims must be dismissed for other reasons, it is unnecessary determine whether Fellman's actions are sufficient to sustain a *Monell* claim against Roslyn Harbor, and I decline to decide the issue at this point.

## CONCLUSION

The amended complaint is dismissed for failure to state a claim. Specifically, I dismiss the due process and § 1985 claims with prejudice and the equal protection and state law claims without prejudice. Plaintiffs may seek leave within twenty-one days to file an amended complaint as to the claims dismissed without prejudice. Any motion for leave to amend should explain why leave to amend should be granted and include as an exhibit a proposed amended complaint correcting the deficiencies identified in this Opinion and Order. The case is stayed for twenty-one days. Should

plaintiffs fail to file a motion to amend within twenty-one days, the case will be dismissed and the Clerk of Court will enter judgment accordingly.

SO ORDERED.

/s/<br>
Allyne R. Ross<br>
United States District Judge

Dated:     May 19, 2023
             Brooklyn, New York